640 A.2d 422

**COMMONWEALTH of Pennsylvania**

v.

**Charles F. GORDON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1993.

Filed March 15, 1994.

Reargument Denied May 17, 1994.

158

Stuart Lev, Asst. Public Defender, Philadelphia, for appellant.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from a judgment of sentence for receiving stolen property. Appellant, Charles Gordon presents the following issues for our consideration:

1. Did not the trial court err in determining that appellant, a homeless person living in an abandoned house, did not have a reasonable expectation of privacy in the premises he used as home, given that: 1) under Article 1 § 8 of the Pennsylvania Constitution appellant has automatic standing to challenge the lawfulness of the warrantless entry and search, 2) society's failure to recognize the legitimacy of his expectation of privacy would deny constitutional protections to thousands of people who are compelled to use abandoned structures as their homes, 3) at the time of his entry the officer had insufficient information from which to conclude that the house was abandoned by its owner?

2. Was not the officer's entry and search of appellant's sleeping quarters made without probable cause as it was based solely on information that a person matching a general description of a robbery suspect was living in the house, which failed to provide a sufficient nexus between that person in the house and the crime?

Appellant's Brief at 2. For the reasons set forth below, we reverse.

The trial court aptly summarized the facts surrounding the warrantless search of the house as follows:

On December 8, 1991, Police Officer Frank Pavgouzas of Philadelphia's 15th Police District was in uniform and on patrol. At approximately 10:40 p.m. he received police radio information of a purse snatch perpetrated by a white male approximately twenty years of age, with blonde hair, and a gray or brown jacket, and jeans. The incident had occurred within five minutes of the radio call in the area of Frankford and Cheltenham Avenues. Officer Pavgouzas investigated a graveyard in the 5700 block of Leonard Street into which the suspect allegedly ran.

While there, the police officer heard a dog barking and went into a rear alleyway where he came upon a gentleman who asked the officer about his presence in the alley. The police officer identified himself and gave him a description of the suspect for whom he was searching. The gentleman directed the officer to an "abandoned house" claiming that a man fitting the description "lived" in the house.

When Officer Pavgouzas arrived at the "abandoned house", he observed an unkempt yard with knee-high weeds. The exterior of the house appeared run down and there were no drapes or shades on the windows. In addition the rear door was almost completely open and the top portion was broken away from the door frame while the bottom portion was still attached to the hinge. Thus, the door was hanging practically on its side.

The officer entered the house through the broken door into a kitchen area which appeared to have not been occupied for some time. The sink contained dirt, and trash was piled throughout the room. The kitchen was dark and lacked kitchen appliances.

Upon hearing a television in the next room, the officer left the kitchen through a doorway which had a sheet hanging down from the top of the doorway. He entered the next room and observed that it was barren except for a television resting on a milk crate, a lamp, a beer "ball", and a mattress on the floor.

The defendant was sitting on the mattress. The officer noticed that the defendant had blonde hair and was wearing a brown jacket and blue pants. There was trash strewn throughout the room, and a black pocketbook lay on the floor approximately two feet from where the defendant was sitting. There was jewelry and other pocketbooks lying round the room. The defendant followed the officer's orders to stand, and once standing, the officer noticed that a blue purse had been underneath him on the mattress. The officer determined that the defendant was unarmed and asked him whose purse it was, but defendant denied knowing its origins. The officer seized both the blue purse and

the black pocketbook and examined their contents. The purse contained the identification of one Cathy Babe, the complainant.

The officer ordered the defendant to exit the house and walk to the corner of Cheltenham Ave. and Leonard St. where they awaited the arrival of the patrol car which was transporting the complainant. When the car arrived, Ms. Babe exited the car and identified the defendant as the man who grabbed her pocketbook. Officer Pavgouzas showed her the pocketbook and purse he recovered from the house and she identified them as her personal property.

Trial Court Opinion.

Appellant was subsequently charged with robbery, theft, simple assault, and receiving stolen property. Appellant filed a motion to suppress all physical evidence, statements, and identifications obtained as a result of the officer's search. The trial court denied appellant's motion. Following a non-jury trial appellant was convicted of receiving stolen property and acquitted of the other charges. Post-verdict motions were filed and denied. This timely appeal followed.

Appellant first argues that the trial court erred in finding that he had no reasonable expectation of privacy in the abandoned house in which he was living. Since we believe that appellant did have a reasonable expectation of privacy in the room where the contraband was found in the instant case, we find that the trial court erred in denying appellant's motion to suppress.

When reviewing the ruling of the suppression court, we are bound by the court's factual findings unless they are unsupported by the record. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (quoting *Commonwealth v. Goodwin*, 460 Pa. 516, 522–23, 333 A.2d 892, 895 (1975)). If the evidence supports the factual conclusions of the suppression court, we may reverse only if there is an error of law. *Commonwealth v. Cameron*, 385 Pa.Super. 492, 495, 561 A.2d 783, 784 (1989); *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986).

Article I, section 8 of the Pennsylvania Constitution states that an individual shall be secure in his or her "persons, houses, papers & possessions from unreasonable searches and seizures." Art. I, Section 8. The courts of Pennsylvania have interpreted this provision of the state constitution to provide a greater degree of protection from governmental intrusion than the fourth amendment of the United States Constitution. *See Cameron,* at 497–98, 561 A.2d at 786–787 and cases cited therein. The touchstone of analysis, however, is the same under both documents, i.e., whether an individual has a legitimate expectation of privacy in the place searched. In determining whether an individual has a legitimate expectation of privacy, there must exist both a subjective expectation of privacy by the individual and that expectation must be one that society recognizes as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan J., Concurring).

The question of whether a person living in an abandoned building can have a reasonable expectation of privacy in that building or the rooms therein, has not been addressed directly by the courts of this Commonwealth. However, this Court's decisions in *Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989) and *Commonwealth v. Peterson,* 408 Pa.Super. 22, 596 A.2d 172 (1991), *aff'd,* 636 A.2d 615 (Pa. 1993), are instructive on this matter.

In *Cameron,* the appellant was charged with possession of a controlled substance and possession with intent to deliver. His arrest had grown out of police officers' warrantless search of an abandoned house. Appellant moved to suppress the evidence claiming that the Commonwealth had violated both his fourth amendment and state constitutional rights against unreasonable searches and seizures. The trial court granted the motion to suppress, finding that because the abandoned house contained some of the characteristics of a home such as a television, couch and a platter of food, appellant had a reasonable expectation of privacy in the house. The Commonwealth appealed and the Superior Court reversed.

The Court agreed that appellant had a subjective expectation of privacy but found that this expectation was not reasonable. The court noted that the privacy concerns which underlie Article 1 § 8 of the Pennsylvania Constitution are not implicated when considering "not a home, but a mere structure." *Cameron,* 385 Pa.Super. at 499, 561 A.2d at 787. The court stated:

> In this case, the Commonwealth offered evidence that officers had been to the same place the day before Cameron was arrested, and that they had been through the entire house. Sergeant Perrone stated that the second floor was littered with trash and excrement, that the windows were broken out and boarded over, and that the utilities were turned off. He further stated that he had arrested other individuals at the house the day before. Cameron was not there at that time, and when questioned after his arrest, gave another address as his home. Under the facts presented, Cameron had no right to enter the house, and had no right to exclude others.

*Id.* at 501, 561 A.2d at 787. Thus, the court concluded that the mere fact that the place searched was a house and contained a couch, some food, and a television did not convert the structure into a home which was entitled to protection under the United States or Pennsylvania Constitutions when appellant did not actually reside in the place searched. The court also noted that appellant had no legal or de facto control of the premises. The Court however cautioned against a broad interpretation of its decision: "we do not decide whether in other circumstances a vacant structure might be considered to be a 'dwelling place' within the purview of article 1, section 8." *Id.*

In *Peterson,* appellant had been selling drugs at a so called "gate house." The gate house was an abandoned storefront, the front windows of which were covered with heavy metal grating. Drugs were then sold through a hole in the door to prevent observation of the seller. Police officers purchased drugs from appellant using dye stained currency and then entered the gate house without a warrant, arrested appellant and seized drugs and the stained money. Appellant moved to

suppress the evidence claiming that his rights under the fourth amendment of the United States Constitution were violated. The trial court denied this request and the Superior Court, with one concurrence and one dissent, affirmed. The Superior Court again agreed that the appellant had a subjective expectation of privacy but found that this expectation was not reasonable. The court stated that when determining whether a legitimate expectation of privacy exists "we seek to uncover 'our societal understanding' of which areas and what conduct should be accorded this 'scrupulous protection'." *Peterson*, at 30, 596 A.2d at 176 (quoting *Oliver v. United States*, 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984)). The court noted that "foremost" among the areas sought to be protected is the home. *Id.* at 28, 596 A.2d at 175.

In explanation of why such protection is afforded the home, the court stated that:

"this protection does not stem from notions of common law property interests in the premises. Nor does the protection surrounding the home depend upon whether the dwelling comports with conventional notions of the definition of a home or how a home is constructed."

*Id.* at 30, 596 A.2d at 176. Rather, the court found that the basis underlying the protection afforded the home "is a common, deep and basic understanding that our society accords to its citizens the right to be secure in areas and activities ordinarily associated with autonomy, privacy and lifestyle." *Id.* at 31–32, 596 A.2d at 177. From the above considerations the court concluded that:

"it is not the superficial characteristics of a structure, its walls, windows, doors or even furnishings, which give it the constitutional cloak accorded a home. Rather, it is the habitation of the structure and its use as a residence which form the purpose of the constitutional protection."

*Id.*

In applying these considerations to the facts of the case before it the court found there was no constitutional protection in the storefront searched; as it was not used as a residence

by appellant and "appellant's only relationship to the structure in question was as a temporary drug dispersal depot." *Id.* at 33–34, 596 A.2d at 177–78. Importantly, both the concurring and dissenting judges indicated that if the storefront had been being used as a shelter by homeless persons, a reasonable expectation of privacy would exist. *See* Concurring Opinion by Hoffman, J. at 53 n. 2, 596 A.2d at 188 n. 2, and Dissenting Opinion by Popovich, J. at 48, 596 A.2d at 185.

From the above decisions therefore, we can extract two important considerations to aid in our determination of whether appellant had a reasonable expectation of privacy in the instant case. The first such consideration is the importance of whether the structure was actually used by an individual as his or her dwelling place. In the absence of such use, the constitutional protection for the home will not attach to the structure, regardless of its contents or physical condition. Conversely, if such use is established, the most "scrupulous" protection will be afforded. The next is that property rights are not determinative of whether a reasonable expectation of privacy exists in a particular place. Thus, a reasonable expectation of privacy therefore can exist in the absence of a property right.

We begin our analysis by determining whether appellant had a subjective expectation of privacy in the building in question. In the instant case, the appellant testified and the trial court found, that appellant had been living in the house in question for two to three months. The Commonwealth contends, however, that the disrepair of the building belies even a subjective expectation of privacy. We disagree. The room was closed off from the rest of the house by a sheet. The officer testified that he had to push aside the sheet to see into the room in which he located appellant. Thus, regardless of whether the backdoor was partially off its hinges or the windows, appellant's room was not wide open to public view. This we believe is sufficient to establish that appellant had a subjective expectation of privacy in the room searched.

The next stage of our analysis requires that we examine whether this subjective expectation of privacy is one which should be deemed reasonable or legitimate by society. The trial court found and the Commonwealth, in its brief, points out the state of disrepair of the building and its lack of amenities normally associated with a "dwelling place." The lack of such facilities did preclude appellant from engaging in such domestic activities such as showering, cooking, etc. However, despite the lack of these amenities, appellant testified, and it was accepted by the trial court, that he was "living" in the house for two to three months. This length of residence in the house in question indicates that the house was indeed appellant's home or dwelling place.

As stated earlier, the home is accorded the most "scrupulous" protection from unreasonable searches and seizures. However, the nature of appellant's "home" in the instant case makes some further discussion necessary. Here, appellant had no property rights in the building in question. Additionally, appellant's testimony indicated that others were also living in the building.

Although appellant had no property rights in the building in question, a lack of a property interest in the premises does not alone serve to deny a resident thereof protection from unreasonable searches and seizures in those premises. *See Peterson* at 30, 596 A.2d at 176. However, the fact that others were present in the building presents a more difficult question. If the building was such as to present unfettered access to any and all, we might find appellant's expectation of privacy therein to be unreasonable. *See Cameron*, 385 Pa.Super. at 501, 561 A.2d at 787. However, we believe that in the instant case, we need not determine whether appellant had a reasonable expectation of privacy as to the entire building. The room where Officer Pavgouzas found appellant and the contraband was separated from the rest of the building. Therefore, regardless of whether others had free access to the building or the other rooms, the room where the search took place was not open to all. Thus, the warrantless search of the room where the contraband was found violated appellant's rights

under the Pennsylvania Constitution to be free from unreasonable searches and seizures. Therefore, the evidence seized from the warrantless search must be suppressed. Accordingly, the judgment of sentence is vacated and the matter remanded for a new trial.

Judgment of sentence vacated, remanded for new trial.

Jurisdiction is Relinquished.