## Commonwealth v. Floyd

*John C. Baer,* for Commonwealth.
*Joseph C. McGraw,* for defendant.

HOOVER, *J.,* March 28, 2007—This appeal by the Commonwealth follows the trial court's grant of the pretrial motion of Michael A. Floyd to suppress evidence. For the reasons set forth herein, the grant of the defendant's motion to suppress should be affirmed.

## RELEVANT FACTUAL AND
## PROCEDURAL BACKGROUND

On June 5, 2006, defendant was charged with attempted criminal homicide, robbery, aggravated assault, flight to avoid apprehension, and unlawful possession of drug paraphernalia. The case was set for trial to begin on October 9, 2006. The trial was then rescheduled to begin on October 31, 2006. On October 30, 2006, the defendant filed a motion to suppress. The court scheduled and conducted a suppression hearing on October 31, 2006 to take evidence relevant to the defendant's motion. At the conclusion of the evidence and the argument of counsel, we granted the motion to suppress.

The record and the facts as adduced at the hearing reflect the following: The probable cause affidavit in this case states that the victim, Derrick Jackson, was in a bar located on 19th Street in the City of Harrisburg on May 15, 2006. According to the affidavit, while the victim was at the rear of the bar, the defendant came up behind him, turned toward him, and plunged a knife/stabbed him in the stomach/chest area and took the victim's white gold rope necklace, the victim's $800 to $1,000 in cash, and the victim's illegal narcotics. On May 28, 2006, the victim came to the Harrisburg Police Department and positively identified the defendant as his assailant. A warrant was issued for the defendant Michael Floyd's arrest.

For approximately six months prior to his arrest on June 5, 2006, the defendant lived at 436 South 14th Street. (Notes of testimony at suppression hearing, October 31, 2006, at 11 (hereinafter, "N.T.").) The defendant testified that he stayed there because he had nowhere else

to go; he acknowledged that he did not pay rent or have permission to stay there, but saw mail which indicated that the house was in foreclosure. (N.T. at 12, 14, 16.) He testified that there were no notices on the building which indicated that it was abandoned, condemned, or uninhabitable. (N.T. at 14.) The defendant testified that he alone had a key to the house, that there was working electricity, a television, lamp, stove, microwave and refrigerator. (N.T. at 12.) At one point, the defendant had phone service at that address in his name, which was later disconnected because he did not pay the bill. (N.T. at 18.) The defendant kept his clothing there. (N.T. at 12.) The defendant came and went as he pleased, and invited friends into the house. (N.T. at 13.)

On June 5, 2006, Detective John O'Connor of the Harrisburg City Police Department was investigating this matter, and had information that defendant lived in the area of the 400 block of South 14th Street. (N.T. at 32.) Officer O'Connor saw a person he recognized as Michael Floyd. *Id.* That individual began running and a foot chase ensued. *Id.* The defendant was eventually caught by Deputy Sheriff William Snyder in the 400 block of South 14th Street. Michael Floyd was then transported to the Harrisburg police station booking room. (N.T. at 33.) Officer O'Connor spoke to several individuals who did not wish to become involved and refused to give their names. They identified 436 South 14th Street as the address where Michael Floyd lived. (N.T. at 33.)

Officer O'Connor then contacted the communications center to check the address. He was told that the property was a vacant structure owned by American Home Mortgage Services of Irving, Texas. (N.T. at 34.) The officer testified that the building appeared unkempt. (N.T. at 34.)

Officer O'Connor testified that he knocked at the door of the address by pounding on the door with his fist. (N.T. at 36.) He yelled to see if anyone was inside. (N.T. at 37.) He looked through the screen of an open front window and observed a television and lamp on. *Id.* Because the door was locked, Officer O'Connor then entered the house by crawling through the window. (N.T. at 38-39.) Once inside, Officer O'Connor turned off the television and lamp and in doing so found a piece of paper with Michael Floyd's name on it. (N.T. at 39.) This piece of paper with Michael Floyd's name on it was in plain view. Officer O'Connor exited the house and requested that officers stand by while he left to obtain a search warrant. (N.T. at 39.) This search warrant was sought to search and seize items listed on the first page of the warrant.

Officer O'Connor prepared the search warrant. In his own words, as set forth in the search warrant, the officer stated that the vacant house had a mattress, couch, and microwave oven and that it appeared to be lived in. In his own statement of probable cause to obtain search warrant presented to the Honorable John F. Cherry, the officer stated that several people "who not will [sic] to provide their names" told him that Michael Floyd lives at 436 South 14th Street. The officer returned with the signed search warrant, executed the search, and seized two crack pipes, clothing and a buck knife.

## DISCUSSION

The trial court properly granted the motion to suppress evidence obtained as a result of a warrantless entry gained in violation of the constitutional rights of the defendant. The evidence was, therefore, improperly seized. We find the testimony of the defendant to be credible and sup-

ported by the testimony of the police officer and the language of his probable cause affidavit.

At the hearing on October 31, 2006, we first considered the issue of standing. It was necessary to determine first whether the defendant possessed standing, based upon a subjective expectation of privacy, to challenge the search. We found that the evidence supported an expectation of privacy on the part of the defendant.

At argument, counsel presented several cases for the court's consideration. We first looked to *Commonwealth v. Boulware,* 876 A.2d 440 (Pa. Super. 2005), in which the Superior Court outlined the defendant's burden of making a preliminary showing of standing and expectation of privacy in seeking suppression of seized evidence. Pursuant to *Boulware,* "[a] defendant seeking suppression of seized evidence has the initial burden of establishing standing and a legitimate expectation of privacy in the area searched or the items seized . . . . An accused may demonstrate standing by presenting evidence of any one of the following four elements: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence seized; (3) that the offense charged includes possession as an essential element; or (4) a proprietary or possessory interest in the searched premises." *Id.* at 442-43. (citations omitted)

Based upon these standards, we found that the defendant presented sufficient evidence for the court to conclude that he had a subjective expectation of privacy in the premises searched. The evidence established his presence on the premises at the time of the search and a possessory interest in the evidence seized. We considered the testimony that the house was his residence, not only according to the defendant's words, but by the language

of the affidavit of probable cause filed by the police which reflected the statements of several people in the area that Michael Floyd "lived" at 436 South 14th Street. See probable cause affidavit. The presence of a lamp, working television, couch, mattress and microwave establish a subjective expectation of privacy.

We next considered the second part of the analysis of a defendant's claim of violation of his rights under Article I, Section 8 of the Pennsylvania Constitution, that is, "whether his subjective expectation of privacy is one that society is prepared to recognize as legitimate," despite the fact that he did not have a legal right to enter or use the building. See *Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993). "[A] defendant can establish a legitimate expectation of privacy, despite lacking a common-law interest in the real property if he demonstrates certain characteristics of ownership. Among the critical characteristics of ownership is the right to exclude others from the premises in question." *Commonwealth v. Gordon,* 546 Pa. 65, 75, 683 A.2d 253, 258 (1996), citing *Rakas v. Illinois,* 439 U.S. 128, 143, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978). Therefore, the fact that the defendant did not own or lease the premises, or that he occupied an abandoned building, does not preclude a finding of a possessory interest and a legitimate expectation of privacy.[1] As the Pennsylvania Superior Court has explained,

"Factors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include (1) possession of a key

---

1. The Supreme Court in *Gordon* stated at n.8, "[we] do not decide whether under other circumstances an individual living in an abandoned structure might demonstrate a legitimate expectation of privacy."

to the premises; (2) having unlimited access to the premises; (3) storing of clothing or other possessions on the premises; (4) involvement of illegal activities on the premises; (5) ability to exclude other persons from the premises; (6) expressions of a subjective expectation of privacy in the premises." *Commonwealth v. Govens,* 429 Pa. Super. 464, 471, 632 A.2d 1316, 1319 (1993). (citations omitted)

The record reflects that the defendant satisfied a majority of these factors in that he had sole possession of a key to the premises, unlimited access to the premises, kept his clothing there, and expressed a subjective expectation of privacy. Under *Rakas* and *Gordon,* the defendant in the instant case satisfies the critical characteristic of ownership by the ability to exclude others from the premises, namely, maintaining a locking door to which only he possessed a key.

Further, we are not persuaded that the warrantless entry was made under exigent circumstances. Although Officer O'Connor explained that he entered the premises to turn off the television and lamp because they might constitute a fire hazard, we heard no evidence of any imminent danger of a spark or overheating justifying such a concern. See N.T. at 38.

Finally, we note upon review of all of the evidence that Officer O'Connor could have secured a search warrant based on the information initially provided to him on the date of the warrantless search. When Officer O'Connor was told by several people that Michael Floyd lived at 436 South 14th Street, the officer had every right to proceed to that address. Having information from several different people that Michael Floyd lived there but finding no one at home at that address, knowing that

the defendant has just been arrested, the officer could have secured a search warrant based upon that information. We cannot overlook the fact that the probable cause affidavit provided to obtain the search warrant contains the same information available to the officer when he went to the house earlier that day without a warrant.

For all of the foregoing reasons, we properly sustained the defendant's motion to suppress evidence seized as a result of the search warrant marked as Commonwealth exhibit no. 1.