J-S45017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CRYSTAL JOYCE SPENCER | : | |
| | : | |
| Appellant | : | No. 1918 MDA 2017 |

Appeal from the Judgment of Sentence Entered November 28, 2017
In the Court of Common Pleas of Bradford County
Criminal Division at No(s):  CP-08-CR-0000294-2017

BEFORE:   OTT, J., MUSMANNO, J. and PLATT[*], J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 31, 2018**

Crystal Joyce Spencer appeals from the judgment of sentence imposed on November 28, 2017, in the Bradford County Court of Common Pleas.  The trial court sentenced Spencer to nine months' probation and imposed an aggregate $400.00 in fines, after she was convicted of possession of a small amount of marijuana and possession of drug paraphernalia[1] following a stipulated non-jury trial.  On appeal, Spencer contends the trial court erred in denying her pre-trial motion to suppress the evidence recovered during a warrantless search.[2]  For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. §§ 780-113(a)(31) and (32), respectively.

[2] We note that in her questions presented, Spencer also challenges the trial court's denial of her pretrial motion for writ of *habeas corpus*.  **See** Spencer's

The relevant facts as developed during Spencer's suppression hearing are as follows. In March of 2017, Constable Bruce Pond posted a 10-day notice of eviction at 320 North Center Street in Canton, Pennsylvania, where Spencer and her boyfriend, Nathan Sechrist[3] lived. *See* N.T., 4/24/2018, at 4-5. On March 10, 2017, after the expiration of the 10-day notice, Constable Pond enlisted two officers from the Canton Police Department to assist him in physically evicting the tenants. He explained he requested the help of the police for his safety because (1) he knew there was "more people staying there" than just the two named tenants; (2) he encountered an "aggressive" dog in the yard when he posted the 10-day notice; and (3) the female landlord was going to accompany him to the eviction. *Id.* at 5-6. Constable Pond also explained the eviction was from a second floor apartment, accessible only by a "pretty narrow" and long back staircase. *Id.* at 9.

The constable, the landlord and two police officers arrived at the property at 9:00 a.m. Constable Pond proceeded up the stairs to the apartment, obtained the keys from the landlord, and opened the door. He

_____

Brief at 4. However, she presents no argument on this issue in her brief, and for that reason, it is waived. *See Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa Super. 2016) ("[I]ssues raised in a Brief's Statement of Questions Involved but not developed in the Brief's argument section will be deemed waived."), *appeal denied*, 161 A.3d 796 (Pa. 2016). Moreover, the claim also becomes moot based upon our disposition of her suppression issue.

[3] Sechrist's name is spelled "Secrest" in the transcript and Spencer's brief. However, we will use the spelling as set forth in the trial court's opinion.

encountered Sechrist drinking a cup of coffee in the kitchen. After the constable told him he had to leave the apartment, Sechrist "bolted through the living room … back to the bedrooms." *Id.* at 10. The constable and the officers followed him into the bedroom, where they observed Spencer still sleeping in bed. Sechrist woke her, and Constable Pond informed her "today[']s your eviction, you have to leave." *Id.* at 11. The constable noted the dog was in a cage in the bedroom. Although Spencer initially resisted, both she and Sechrist eventually left the apartment peacefully.

Constable Pond testified he smelled marijuana when he was in the bedroom. After Spencer and Sechrist left the apartment, the constable observed several marijuana cigarettes in the bedroom and living room. *See id.* at 12-13. At that point, Constable Pond secured the apartment and the officers left to apply for a search warrant.

Canton Borough Police Officer Dalton Spencer testified he noticed the odor of marijuana as soon as he entered the apartment, and observed a "marijuana roach" on the living room table and additional paraphernalia in the bedroom. *See id.* at 27. When they were checking the attic to make sure no other persons were present, the officer observed additional drug paraphernalia. *See id.* at 28. Officer Spencer testified he and the other officer asked Constable Pond and the landlord to secure the premises so that they could obtain a search warrant. They executed the warrant later that same day.

Spencer was subsequently charged with possession of a small amount of marijuana and possession of drug paraphernalia. On June 15, 2017, she filed an omnibus pretrial motion, seeking suppression of the evidence observed during a warrantless search, and a writ of *habeas corpus* based upon the Commonwealth's failure to establish a *prima facie* case. The trial court conducted a suppression hearing on August 1, 2017. Thereafter, on August 31, 2017, the court entered an order denying Spencer's motion to suppress, and motion for writ of *habeas corpus*. On September 27, 2017, Spencer filed a motion requesting the trial court amend its order to allow an immediate appeal pursuant to 42 Pa.C.S. § 702(b), which the trial court subsequently denied. On November 28, 2017, the case proceeded to a bench trial on stipulated facts. The court found Spencer guilty of both charges and sentenced her to a term of nine months' probation for possession of drug paraphernalia, and an aggregate fine of $400.00. This timely appeal follows.[4]

_____

[4] On December 28, 2017, the trial court ordered Spencer to file a concise statement of errors complained of on appeal within 21 days. When she failed to do so, the court entered another order on February 27, 2018, in which it acknowledged that the failure to file a timely concise statement constitutes ineffectiveness *per se*. **See** Order Pursuant to Rule 1925(a) at ¶ 3. Because (1) Spencer previously sought permission to appeal the denial of her suppression motion, and (2) the case was later tried on stipulated facts, the court anticipated the issue on appeal would be limited to the denial of her suppression motion, which the court explained in an opinion filed on September 1, 2017. Therefore, the trial court provided Spencer with additional time – until March 9, 2018 – to file a concise statement. Spencer filed her concise statement on March 5, 2018.

On appeal, Spencer contends the trial court erred in denying her pretrial motion to suppress because she was subject to a warrantless, unlawful search. Specifically, she argues: (1) police officers are not statutorily authorized to effectuate evictions, and Constable Pond's reasons for requesting security were unreasonable; (2) the search warrant was based solely on information gathered during the warrantless search; (3) Spencer possessed a reasonable expectation of privacy in the apartment; and (5) the inevitable discovery/independent source doctrines do not apply. *See* Spencer's Brief at 15-36.

 Our well-settled standard of review is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The

---

Pursuant to Pa.R.A.P. 1925(c)(3), when the failure to file a concise statement is the result of counsel's ineffectiveness, an appellate court should remand the case "for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). However, this Court has found remand unnecessary where counsel filed an untimely statement, and the trial court issued an opinion addressing the claim. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*). Here, counsel's untimely statement lists two issues, both of which were raised in Spencer's pretrial motion, and disposed of by the trial court in its September 1, 2017, opinion. Accordingly, we find remand is unnecessary.

suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

***Commonwealth v. Freeman***, 150 A.3d 32, 34–35 (Pa. Super. 2016) (quotation omitted), *appeal denied*, 169 A.3d 524 (Pa. 2017).

The trial court denied Spencer's suppression motion because it concluded the police were "lawfully present as back-up security" when they observed marijuana and paraphernalia in plain view in the apartment. Trial Court Opinion, 8/31/2017, at 3. Although recognizing "Pennsylvania statutory law does not authorize police to evict tenants,"[5] the court, nevertheless, concluded Constable Pond's "request to have law enforcement accompany him was reasonable and justified." ***Id.*** at 2. While we agree with the court's ruling denying Spencer's motion to suppress, we do so for different reasons. ***See In Interest of N.B.***, 187 A.3d 941, 945 (Pa. Super. 2018) (*en banc*) ("It is well settled that this Court may affirm "on any valid basis appearing of record.") (quotation omitted).

As the trial court concedes, police officers are not statutorily authorized to evict tenants. Rather, the Landlord Tenant Act specifies the power to evict lies with a "writ server, constable or sheriff." 68 P.S. §§ 250.503(b). ***See also*** 68 P.S. § 504 (requiring the "writ server, constable or sheriff" to "make

---

[5] ***See*** Trial Court Opinion, 8/31/2017, at 2 n.1.

- 6 -

return of the writ of possession to the justice of the peace within ten days after receiving the writ" and showing, *inter alia*, "the time and date of any forcible entry and ejectment"). Nevertheless, the court, herein, found it was "reasonable and appropriate – and not unlawful – for Constable Pond to request police accompaniment under the circumstances" of this case. Trial Court Opinion, 8/31/2017, at 3. While we agree it was reasonable for the constable to request police back-up, we do not believe the constable's subjective concern for his own safety justified the officers' warrantless **entry** into Spencer's apartment **before** the constable evicted her.

Both the United States and Pennsylvania Constitutions protect citizens from "unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy." **Commonwealth v. Loughnane**, 173 A.3d 733, 741 (Pa. 2017). "[A] warrantless search of a residence is *per se* unreasonable unless justified by a specific exception to the warrant requirement." **Commonwealth v. Gutierrez**, 750 A.2d 906, 909 (Pa. Super. 2000).

Before Constable Pond evicted Spencer and Sechrist, there is no doubt Spencer had a reasonable expectation of privacy in her apartment. Absent consent or exigent circumstances, the officers had no basis to enter the apartment without a warrant. Constable Pond's concern for his security could have been alleviated if the officers had remained outside the residence, ready

to intervene if the circumstances required them to do so.[6]  Although Sechrist ran into the bedroom when Constable Pond informed him he was being evicted, there was no testimony or evidence that his actions posed a present security risk justifying the officers' immediate intervention.  Accordingly, in the absence of statutory authority to assist in evictions, or another recognized exception to the warrant requirement, we conclude the officers' warrantless entry into Spencer's apartment was unlawful.

Nevertheless, we find the evidence recovered from Spencer's apartment is admissible pursuant to the inevitable discovery/independent source doctrine.

In **Commonwealth v. Mason**, 637 A.2d 251, 254 (Pa. 1993), the Pennsylvania Supreme Court recognized that "the 'independent source' doctrine applied in Pennsylvania."  The doctrine provides:

> If the prosecution can demonstrate that the allegedly tainted evidence was procured from an independent origin—a means other than the tainted sources—the evidence will be admissible.

**Id.**, quoting **Commonwealth v. Melilli**, 555 A.2d 1254, 1262 (Pa. 1989).

However, the **Mason** Court declined to apply the doctrine under the facts of that case, where police officers forcibly entered an apartment they had under

---

[6] We note Constable Pond's concern for his safety was based upon his knowledge that there might be multiple persons in the apartment, and an aggressive dog.  There was no indication, however, that any of the occupants were armed or dangerous.

surveillance for drug sales. Although prior to their entry, one officer had left to apply for a search warrant based on information that would have been sufficient to demonstrate probable cause,[7] the Court opined: "Where the police battering ram is at the door, without exigent circumstances and without a warrant, it is plain that the violent shattering of the door constitutes an unconstitutional invasion of privacy of which every person in this Commonwealth may complain." *Id.* at 256.

Subsequently, in **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996), the Court adopted the following limitation to the doctrine as set forth by Justice Cappy in his concurring opinion in **Mason**, **supra**:

> [A]pplication of the "independent source doctrine" is proper only in the very limited circumstances where the "independent source" is truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered.

**Melendez**, **supra**, 676 A.2d at 231, *quoting* **Mason**, **supra**, 637 A.2d at 258-259 (Cappy J., Concurring). Recently, a panel of this Court observed:

> [T]he inevitable discovery doctrine is not a substitute for the warrant requirement. Police must demonstrate that the evidence **would** have been discovered absent the police misconduct, not simply that they somehow **could** have lawfully discovered it.

**Commonwealth v. Perel**, 107 A.3d 185, 196 (Pa. Super. 2014) (emphasis in original), *appeal denied*, 124 A.3d 309 (Pa. 2015).

---

[7] **See Mason**, **supra**, 637 A.2d at 252-253.

Here, although we agree the police officers unlawfully entered Spencer's apartment, we conclude suppression of the evidence recovered therein is not necessary because Constable Pond also independently observed evidence of drug use in plain view. The relevant portion of his testimony is as follows:

Q    … I guess where you left off was the [landlord] there watching [Good get dressed] in the bedroom and you officers are outside the bedroom. …

Then what happened next?

A    Well when [we] were in the door I smell[ed] the smell of marijuana in the bedroom.

Q    Okay.

A    [O]kay, um, at that time I, I, everything was going on in the bedroom and everything and then they came out and they left and um, they left the premises and then as I walked, as I was standing in the bedroom I seen there was a table in front of a TV that had um, marijuana, ah, roaches I guess you call em, cigarettes and burnt …

Q    The appearance of a marijuana cigarette?

A    Excuse me?

Q    Are you familiar with the smell of marijuana?

A    Oh yes, yes.

Q    Are you familiar with the hand rolled cigarettes?

A    Yes, yes after they're burned or they're smoked.

Q    Okay and is that what you saw there?

A    Yea, that's what I saw there and in the living room when I came through there was one on a soda can. Just a marijuana cigarette butt on top of the soda can on the coffee table in the living room.

Q    Okay.

A        And um, it, well they left and I told, I told the two officers, I says there's marijuana there and I says it smells  and they agree with me yea there was a smell …

N.T, 8/1/2017, at 12-13.

As noted above, Constable Pond testified he smelled marijuana in the bedroom of the apartment, and viewed two marijuana cigarettes in plain view, one in the bedroom and one in the living room.  Accordingly, while we agree the officers unlawfully entered Spencer's apartment before she was rightfully evicted[8] and the evidence they saw in plain view could not supply probable cause for a search warrant, the testimony clearly demonstrates Constable Pond – who was authorized to enter Spencer's apartment to effectuate her

_____

[8] We note, too, that after Spencer was lawfully evicted, she would have had no reasonable expectation of privacy in the apartment, and the police could have entered at that time.  "An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as legitimate and reasonable." **Loughnane**, **supra**, 173 A.3d at 741.  The Pennsylvania Supreme Court's decision in **Commonwealth v. Gordon**, 683 A.2d 253 (Pa. 1996), is instructive.

In that case, the Court considered whether the defendant had a legitimate expectation of privacy in the abandoned house where he was staying.  The defendant was living in the dining room, which was set off from the rest of the house by a hanging sheet.  **See id.** at 255.  Although the **Gordon** Court recognized a person may possess a legitimate expectation of privacy even if he lacks a "common-law interest in the real property," it ultimately determined the defendant was unable to demonstrate a legitimate expectation of privacy under the facts of that case. **Id.** at 258.  The **Gordon** Court observed:  "Among the critical characteristics of ownership is the right to exclude others from the premises in question." **Id.**  The Court found the defendant's hanging of a sheet did not serve to exclude others from the dining room of the abandoned house. **See id.**  The same reasoning applies here.  Once Spencer was (lawfully) evicted from the apartment, she had no authority to exclude others from the premises, and accordingly, would have been unable to demonstrate a legitimate expectation of privacy therein.

eviction – also independently viewed drug paraphernalia and smelled the odor of marijuana. Accordingly, Constable Pond was an independent source for the tainted evidence, which would have been inevitably discovered absent the unlawful police conduct. Therefore, we affirm the order of the suppression court.

Order affirmed.

Judge Musmanno joins this memorandum.

Judge Platt concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2018