**[J-66-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 EAP 2025 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 980 EDA |
| | : | 2023 entered on June 7, 2024, |
| v. | : | reversing and remanding the Order |
| | : | of the Philadelphia County Court of |
| | : | Common Pleas at No. CP-51-CR- |
| ELISE COLES, | : | 0008713-2021, entered on March |
| | : | 17, 2023. |
| Appellant | : | |
| | : | ARGUED: September 10, 2025 |

## DISSENTING STATEMENT

**JUSTICE WECHT**

The Majority dismisses this appeal as "improvidently granted." Nothing about this case warrants such a summary dismissal. We should resolve the question upon which we granted review. The bench and bar, and all Pennsylvanians, would benefit from a precedential opinion from this Court.

We granted allowance of appeal in order to answer the following question:

Consistent with the requirement of individualized suspicion imposed by Article I, Section 8 of the Pennsylvania constitution, may police detain someone for running from police when the only other factor is their mere proximity to a person smoking marijuana?[1]

The question arose from the following circumstances. On the evening of September 24, 2020, Philadelphia Police Officer Ryan Struble was sitting in a marked police vehicle. He observed three people, one of whom was Elise Coles, sitting outside near a street corner. Darkness had fallen; visibility was low. Nonetheless, Officer Struble was able to see one

---

[1] *Commonwealth v. Coles*, 332 A.3d 1185 (Pa. 2025) (*per curiam*).

of the individuals holding a smoking, brown cigar. The officer also detected the odor of burnt marijuana. Officer Struble and his partner approached the trio in order to investigate. Coles—who was wearing a backpack—saw the officers exit their marked vehicle, and she fled into a nearby residence. Accompanied by three other uniformed officers, Officer Struble pursued Coles, forced entry into the residence, and detained Coles in the living room. Coles was no longer wearing the backpack. Officers found it in the kitchen. A police officer felt and patted the backpack, and suspected that it contained a firearm. The officer confirmed this suspicion by opening the backpack. Coles did not have a license to carry the firearm. The officer arrested Coles for violating the Uniform Firearms Act.[2]

Coles filed a pretrial motion to suppress the firearm, arguing that the officers' entry into the residence and their subsequent search of her backpack violated her rights under the United States and Pennsylvania Constitutions.[3] The Commonwealth responded that, because Coles had abandoned her backpack in a residence in which she had no lawful right to be, she relinquished any reasonable expectation of privacy that she might have had in the backpack.

Evaluating the totality of the circumstances, the trial court concluded that the officers had reasonable suspicion to justify pursuing Coles in order to investigate the potential use of marijuana on the street corner.[4] The trial court concluded, however, that the totality of the circumstances did not demonstrate that Coles intended to abandon her

---

[2]     18 Pa.C.S. §§ 6106(a), 6108.

[3]     *See* U.S. CONST. amend. IV and PA. CONST. art I, § 8.

[4]     Tr. Ct. Op., 8/25/2023, at 5.

backpack or to forfeit her expectation of privacy therein.[5]  The trial court ruled that the search of the backpack exceeded any search permitted by *Terry v. Ohio*.[6]  In the trial court's view, Coles maintained a reasonable expectation of privacy in the backpack throughout the entire encounter, and the search of the backpack was unrelated to any criminal activity suspected at the street corner.  The trial court granted Coles' motion, and it suppressed the gun found in the backpack.

The Superior Court reversed.  It opined that the record did not support the trial court's conclusion that Coles did not abandon the backpack.[7]  The court first held that police officers had reasonable suspicion to justify pursuing Coles into the residence in order to continue their investigation of the apparent use of marijuana on the street corner.  Because Coles abandoned the backpack in a house that she had no right to enter, and because the abandonment was not coerced by unlawful police conduct, the court held, "it logically follows that [Coles] did not have a reasonable expectation of privacy in the backpack and its contents[.]"[8]  The court concluded that the officers needed neither reasonable suspicion nor probable cause to search the abandoned backpack.

---

[5]    *Id*.  The trial court identified several circumstances that undermined the Commonwealth's theory of abandonment:  No officer saw Coles discard the backpack; the backpack was not left in a trashcan or other disposal receptable; the backpack was left in the residence of an acquaintance; and Coles later returned to the police station to retrieve earbuds from within the backpack.

[6]    392 U.S. 1, 30 (1968) (requiring "reasonable grounds to believe that" an individual "was armed and dangerous" to justify frisking that individual).  The trial court reasoned that, under *Terry*, the police officer must have had reasonable suspicion that Coles was a danger to the officer in order to search the backpack.

[7]    *Commonwealth v. Coles*, 317 A.3d 659 (Pa. Super. 2024).

[8]    *Id*. at 664.

Evidence seized in violation of Article I, Section 8 of the Pennsylvania Constitution must be suppressed.[9] In order to demonstrate such a constitutional violation, Coles would first have to demonstrate a legitimate expectation of privacy in the backpack. This required Coles to "(1) have exhibited a subjective expectation of privacy and (2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable and legitimate."[10] An expectation of privacy does not extend to property that a defendant has voluntarily abandoned or relinquished.[11] If Coles had abandoned the backpack, as the Commonwealth asserted, that act would have obviated the need for law enforcement to establish cause to search it.[12]

Police pursuit of an individual is a "seizure" under Article I, Section 8 of the Pennsylvania Constitution.[13] Like any seizure, police pursuit must be founded upon reasonable suspicion to detain or upon probable cause to arrest.[14] Were we to decide the issue presented to us on this appeal, we would resolve whether the police officers had reasonable suspicion to detain Coles when she ran away at the officers' approach. Consequently, the threshold issue in evaluating Coles' motion to suppress was whether

---

[9]    *Commonwealth v. Gordon*, 683 A.2d 253, 256 (Pa. 1996).

[10]    *Id*.

[11]    *Id*.

[12]    Evidence nonetheless will be inadmissible if the defendant is forced to abandon property due to compulsion or coercive actions by law enforcement. *Commonwealth v. Matos*, 672 A.2d 769, 771 (Pa. 1996).

[13]    *Id*. at 776. *Matos* is premised upon Article I, Section 8 of the Pennsylvania Constitution, and represents a departure from Fourth Amendment precedent. The Court declined to adopt the narrower definition of seizure embraced by the Supreme Court of the United States in *California v. Hodari D*., 499 U.S. 621 (1991), in which that Court held that a person is not seized until he or she submits to a police officer's show of authority or are physically apprehended. *Matos*, 672 A.2d at 776.

[14]    *Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999).

the pursuit preceding abandonment was lawful. If the pursuit was premised upon reasonable suspicion or probable cause, it was lawful, and Coles' abandonment of the backpack was not unlawfully coerced. However, if it was not premised upon reasonable suspicion or probable cause, then the pursuit was unlawful, the abandonment of the backpack was coerced, and the gun found in the backpack has to be suppressed.

In the landmark case of *Terry*, the United States Supreme Court decided whether a police officer's stop-and-frisk on less than probable cause was constitutionally reasonable. The Court held that it was. Two conditions must be satisfied in order to validate a so-called *Terry* stop:

> First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.[15]

A stop, or temporary seizure, is permitted under *Terry* and its progeny when the police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot."[16] In determining whether reasonable suspicion exists, we consider the totality of the circumstances.[17] We follow *Terry* in stop and frisk cases, even when a party's arguments are premised upon Article I, Section 8 of the Pennsylvania Constitution.[18] Were we deciding the issue before us, this would be the framework for our analysis.

---

[15] *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009).

[16] *Terry*, 392 U.S. at 30.

[17] *In re D.M.,* 781 A.2d 1161, 1163 (Pa. 2001).

[18] *Id*. at 1163.

Our resolution of this appeal should distill to whether, under the totality of the circumstances, the police officers had individualized reasonable suspicion that Coles was involved in criminal activity when Coles fled from the street corner upon the officers' approach and officers gave chase. Here, where the police officer observed a marijuana cloud above a group of several people, there was no lack of evidence to believe that someone in the group had committed a crime. The question in this case is whether evidence that someone in a group has committed a crime justifies the seizure of the entire group or a particular person in that group, or whether police officers must have more individualized suspicion. On the one hand, when they cannot single out one particular person as a suspect, police officers may be able to freeze the situation while they investigate in order to confirm or dispel their suspicion. On the other hand, it is well-established that police officers must reasonably believe that a particular suspect was "engaged or had engaged in criminal conduct."[19] Under the totality of the circumstances, it may also be relevant that Coles fled upon the police officers' approach. Although flight may indicate consciousness of guilt, flight alone is insufficient to justify seizure, as it establishes neither probable cause nor reasonable suspicion.[20]

At this juncture, and at our direction, the parties have diligently expended their time and resources to brief this issue and to present oral argument. That issue, having been briefed and argued, it now is ready to be resolved. We should decide the issue before us. No compelling reason exists, and this Court identifies none in its order, that warrants abandoning this case at such a late stage, particularly when the result would clarify an important area of law. I dissent from the Court's decision to dismiss the appeal as improvidently granted.

---

[19]  *Brown v. Texas*, 443 U.S. 47, 53 (1979).

[20]  *Commonwealth v. Jeffries*, 311 A.2d 914, 917 (Pa. 1973).