636 A.2d 615

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Warren PETERSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 5, 1993.

Decided Nov. 5, 1993.

---

494

Karl Baker, John Packel, Philadelphia, for W. Peterson.

Catherine Marshall, Ronald Eisenberg, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION*

MONTEMURO, Justice.

We have granted permission for this appeal in order to determine whether warrantless entry by police into an abandoned storefront where drugs were being sold violates the constitutional prohibition against unreasonable searches and seizures.

Appellant was arrested when he was found to be marked with an indelible, perspiration activated blue dye from a specially prepared and recorded ten dollar bill passed to him by a police officer making a controlled purchase of cocaine. The transaction took place though a three inch hole in the door of the abandoned storefront where appellant was engaged in the sale of drugs. Heavy metal grates covered the windows of the building, and the door through which the exchange was transacted was barricaded. The police had been alerted by an anonymous informant that such an operation, termed a gate house [1], was being carried on at that location, and had gone there armed with the marked money to investigate.

---

1. Gate houses have several features in common: a heavily fortified location, quick turnover of merchandise, juveniles or young adults in control of the sales who man the operation in shifts, and no contact, either visual or personal between buyer and seller.

Officer Steve Powell approached the heavily fortified door and asked for "a dime," street terminology for drugs worth ten dollars. He handed the money through the hole in the door, and in return received from a source who was never in view, a heat-sealed plastic bag containing a white powder. The officer retreated to his vehicle, and waited for fifteen minutes for reinforcements. Police gained access to the building, after announcing themselves and receiving no response except thumping and rustling noises from within, by breaking the door in half, the barricades being impervious to ordinary force.

Inside, the officers found a velvet bag containing cocaine in both powdered and crack form. Although there were two people present in one or two rooms on the upper floors of the building and three people other than appellant found in the storefront area, the store area was clearly not in use, and according to police description was uninhabitable. In a back room, police discovered appellant, identifiable only by the presence of the dye and of the marked ten dollar note in his pocket, in a makeshift bed, with a woman showing traces of blue dye on her body. On the floor stood a bucket containing human waste. Other than his bedmate, appellant was the only occupant of the building marked with the dye. When asked for his address, appellant gave a street name and number other than the building in which he was found.

Appellant was found guilty by the trial court of delivery and possession with intent to deliver cocaine, and was sentenced to three to six years imprisonment. The Superior Court affirmed, holding in a plurality Opinion [2] that appellant had no reasonable or legitimate expectation of privacy in the premises searched, and that exigent circumstances justified the warrantless entry. We granted allocatur to consider whether police had violated appellant's constitutional rights by their warrantless entry into the abandoned storefront in order to arrest him.

**2.** *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596 A.2d 172 (1991) (per Beck, J., Popovich, J., dissenting, Hoffman, J. concurring.)

■ Appellant presents two claims, first arguing that the exigent circumstances which existed at the time of the search were created by police, thus rendering their warrantless intrusion impermissible. Second, appellant contends that the Superior Court plurality, contrary to Pennsylvania law, has imposed a federal standing requirement in this case. We will address these matters seriatim, although not in the order presented.

In reviewing a trial court's denial of a motion to suppress, the appellate court's responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Hughes,* 521 Pa. 423, 438, 555 A.2d 1264, 1271 (1989). In making this determination, we will consider the evidence of the prosecution's witnesses and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Id.,* 521 Pa. at 438, 555 A.2d at 1271–72 (quoting *Commonwealth v. Kichline,* 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976)).

*Commonwealth v. Brundidge,* 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993).

It is argued that the Superior Court's plurality Opinion erred in applying a federal standing requirement to appellant's case, when such a condition precedent as standing has been categorically rejected by this Court in *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). Appellant claims that contrary to the more liberal protection afforded by Article I, Section 8 of the Pennsylvania Constitution, the Superior Court plurality required, improperly, that he demonstrate a legitimate expectation of privacy in the premises where he was arrested prior to challenging the government's action.

We first note that at no time prior to presentation before this court in his Petition for Allocatur had this issue been raised. It had apparently never occurred to appellant that he was being foreclosed on the basis of standing from challenging his warrantless arrest in the gate house. In fact, at no time was appellant's standing to move for suppression questioned.

Rather, the concurring Superior Court Opinion raises the matter of standing on the grounds that under *Sell,* "a focus on the particular defendant's expectation of privacy, rather than the lawfulness of the police conduct, is improper." *Commonwealth v. Peterson,* 408 Pa.Super. 22, 50, 596 A.2d 172, 186 (1991). We find that the concurrence has misapprehended the nature of the inquiry attendant upon a suppression motion of this kind, and has, as well, mischaracterized the burden placed upon appellant.

 Standing denotes the existence of a legal interest. In the context of this case, the term refers specifically to appellant's right to have the merits of his suppression motion adjudicated without a preliminary showing of ownership or possession in the premises or effects seized. *Sell, supra,* established the existence of this right unequivocally, holding that a charge of possessory offenses is sufficient, without more, to confer standing. As we have already stated, at no time was appellant's standing in this matter contested. However, having had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to do so, he must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article 1, Section 8, to be "secure . . . against unreasonable searches and seizures." *See, Commonwealth v. Brundidge,* 533 Pa. 167, 170, 620 A.2d 1115, 1118 (1993); *Commonwealth v. Oglialoro,* 525 Pa. 250, 256, 579 A.2d 1288, 1290–1 (1990). He must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises. *See, Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989) *alloc. denied,* 525 Pa. 576, 575 A.2d 108 (1989). The Superior Court concurrence failed to distinguish between the necessity for a preliminary demonstration of proprietary or possessory interest, a necessity which does not exist in Pennsylvania, and the necessity of demonstrating the merits of a

suppression claim. Appellant's automatic standing does not divest him of the evidentiary responsibility to show that the warrantless entry into the storefront by law enforcement personnel violated a reasonable and legitimate expectation of privacy.

It is the merits of the claim which should be the subject of appellant's second issue. Instead, he contends that the exigent circumstances which the Superior Court plurality found to exist were created by the police themselves, and could have been avoided by use of some other investigative technique. Appellant suggests that either surveillance while a warrant was being procured, or another type of dye, an invisible ultraviolet variety, which would not have revealed its presence so immediately, would have permitted police to comply with the warrant requirement.

■ The problem with this assertion, however, is that in advancing it appellant has tacitly supposed a condition precedent. Therefore, before examining appellant's argument, we must first analyze its unspoken predicate, that a showing of exigent circumstances was necessary because appellant possessed a reasonable and legitimate, and thus constitutionally protected, privacy interest in the premises. Without such expectation of privacy, police entry into the store front would have constituted no intrusion, and the exigent circumstances which are posited to justify police action need not be advanced. Although both the trial court and the Superior Court plurality found that there were exigent circumstances, this conclusion followed upon a prior determination that appellant held no reasonable and legitimate expectation of privacy such as would activate his rights under Article 1, Section 8. As such it was unnecessary.

■ Our analysis begins with the principle that warrantless arrests may be effected for felonies committed in the presence of the police, *Carroll v. United States,* 267 U.S. 132, 45 S.Ct.

280, 69 L.Ed. 543 (1925)[3]; *Commonwealth v. Jackson*, 450 Pa. 113, 299 A.2d 213 (1973), unless the perpetrator of the felony is in his own home. *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), cert. denied, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). In such instances, exigent circumstances must exist to justify the warrantless intrusion because of the substantial expectation of privacy in vested residential premises. *Id.* Absent the presumption of a privacy interest consonant with residence or some adequate substitute, no warrant need be obtained.

Although appellant refers to the seven part test for exigent circumstances enunciated by the *Williams* court, *see also, Commonwealth v. Lopez*, 525 Pa. 185, 579 A.2d 854 (1990), he makes no attempt to argue that the storefront was his home or its equivalent. Instead he posits lapses on the part of the police, and assumptions unsupported by legal authority to establish the existence of a zone of privacy: the police had no information concerning who owned the building before they broke into it; the rights of the "boarders" found on the upper floor were violated by the search; there was no conclusive proof offered of the building's having been abandoned; appellant's use of the storefront as an illegal commercial enterprise provides him with a privacy interest requiring the police to obtain a warrant prior to entry. However, none of these claims are persuasive since none meets or removes appellant's burden of demonstrating an expectation of privacy in the premises, specific to himself, which society is prepared to recognize as reasonable. *See, Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Without such a showing we cannot assume that the storefront provided appellant with the same expectation of privacy as would a residence, particularly since the residence address appellant gave to police upon arrest was not that of the storefront. We must, therefore, examine the expectation of

**3.** Appellant concedes that the "offense was grave and probable cause [for arrest] was clearly present." (Appellant's Brief at 16.) *See, United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

privacy he might have had where he was found. More critically, we must examine what, if any, expectations of privacy would be constitutionally "justifiable" in appellant's situation. *Hudson v. Palmer*, 468 U.S. 517, 525 n. 7, 104 S.Ct. 3194, 3199 n. 7, 82 L.Ed.2d 393 (1984). As the Superior Court correctly noted, "The resolution of this issue depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved." *Peterson*, 408 Pa.Super. at 27, 596 A.2d 174; *Hudson v. Palmer, supra; Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

In *Commonwealth v. Cameron*, 385 Pa.Super. 492, 561 A.2d 783 (1989), *alloc. denied*, 525 Pa. 576, 575 A.2d 108 (1989), the Superior Court found that although furnished with a working television, a couch and food, the abandoned house out of which a drug operation was conducted did not offer appellant a zone of privacy which would have necessitated the acquisition of a warrant to justify police entry, particularly where appellant offered a different address as that of his residence. Although appellant Cameron manifested a subjective expectation of privacy, it was not a legitimate one, as he had no rights as against the owner, and none which would permit him to exclude other persons attempting to enter. *See, Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978).

We find that much the same situation obtains here. As Mr. Chief Justice Rehnquist states in *Rakas*,

Obviously, however, a "legitimate expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate."

*Id.* at 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12.

Amid all his arguments, including the final one, that "the constitutional rights afforded citizens of Pennsylvania should not be diminished because some few among them may succumb to dealing drugs in the squalid environment of a store-

front "gatehouse," (Appellant's Brief at 25) appellant makes none which would qualify his expectation of privacy as a legitimate one, the sine qua non for establishing that the government's intrusion was unlawful. He has made no averment of possessory interest, legitimate presence, or indeed any factor from which a reasonable and justifiable expectation of privacy could be deduced. In so concluding, we diminish no right, since none has been demonstrated. We therefore need not address appellant's claim that the exigent circumstances present during this arrest were police-created, since the need for such exigencies to justify the warrantless entry never existed.

Judgment of sentence affirmed.