J-S52016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: F.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.S., A MINOR | |
| | No. 1901 WDA 2014 |

Appeal from the Order of October 21, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): JID 37650E, Case T180259, Docket 292-11

BEFORE: SHOGAN, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 14, 2015**

Appellant, F.S., a minor, appeals from the dispositional order entered on October 21, 2014. Upon careful review, we affirm.

We quote relevant portions of the suppression court's recitation of the facts as follows.[1, 2]

> On February 8, 2014, Jeannette Geisey rented a hotel room at the Holiday Inn Express located at 8400 Route 30, North Huntingdon, Pennsylvania. Virginia Morris, a Holiday Inn

---

[1] We include only the evidence of record established during the March 10, 2014 hearing on Appellant's motion to suppress. **See In re L.J.**, 79 A.3d 1073, 1088-1089 (Pa. 2013) (announcing prospective application of rule precluding appellate courts from considering evidence outside the record of the suppression hearing in reviewing a suppression ruling).

[2] This case was originally filed in the Court of Common Pleas of Westmoreland County and Appellant's motion to suppress was filed in that court and decided by the Honorable Michele G. Bononi. As Appellant resided in Allegheny County, the delinquency adjudication hearing for Appellant was held in the Court of Common Pleas of Allegheny County before the Honorable Dwayne D. Woodruff.

Express Night Auditor, checked Ms. Geisey into Room 223 for two (2) nights. At the time[,] Ms. Geisey did not indicate that others would be staying with her. Ms. Morris further stated that her registration card indicated one guest would be staying there. Ms. Morris confirmed that the person who rent[s a] room can take anybody they want to the room. [Patricia] Niemiec, Ms. Morris's boss, testified that once an adult rents a hotel room, they can give a key to whomever they like, including a minor. Ms. Niemiec further stated that room renters give room keys to family and friends. The hotel does not rent to minors.

Room 223 had a king size bed. Ms. Morris testified that once Ms. Geisey rented room 223, she observed Ms. Geisey and two or three males and two females go up to the room. A few minutes after Ms. Geisey rented the room and the group went up to the room, one of the black males came down to the front desk and requested a room change because they needed two separate beds instead of a king size bed. Ms. Morris exchanged the room and the group was moved from Room 223 to Room 315. She gave the black male the new keys but never asked his name because he was in possession of the old room keys. Ms. Morris testified that she did not see Ms. Geisey go up to the room after the exchange of the keys but she did see everyone but Ms. Geisey walking in the next day. Ms. Morris also confirmed that she was aware that there was a group of individuals going up to Room 315.

Ms. Morris could not identify the juveniles as any of the individuals with Ms. Geisey.

Richard Priestly, another Holiday Inn Express Night Auditor, testified that he called the police on the night of February 10, 2014. Mr. Priestly noticed a lot of continuous foot traffic in and out of the hotel which was pretty odd for that time of night. He testified that the two juveniles and an unknown female went in and out of the hotel close to a half dozen times between the hours of 11:00 p.m. and 2:00 a.m. He stated that the two juveniles and the unknown female would go into Room 315 when they were in the hotel. Mr. Priestly never saw the males or the unknown female actually do anything illegal but he had a feeling that something wasn't right. He stated that the males and the female would exit the hotel and go to a dark colored SUV, Chevrolet Blazer, in the parking lot. He indicated that the males and the female went to the dark colored SUV maybe twice out of

the half dozen times the group exited the hotel. He did not see them go to any other vehicle.[3] Mr. Priestly decided to call the police around 2:00 a.m. At the time Sgt. Arendas arrived at the Holiday Inn Express, one male and one female had left the hotel in the Chevrolet Blazer.[4] Two other officers arrived at the hotel while Mr. Priestly was talking with Sgt. Arendas. Mr. Priestly never observed any money or drugs and did not see the two black males or the female approach anyone or make any transactions. Mr. Priestly was unable to provide a vehicle description to Sgt. Arendas. Sgt. Arendas informed Mr. Priestly that because he had not observed any illegal activity, the police lacked probable cause and the best they could do was keep an eye on the parking lot. The police told Mr. Priestly that they would make their presence known and try to discourage any illegal behavior that they were doing even if "they couldn't get anything." The police then left the hotel.

Within five minutes of the police leaving the hotel, a black male and female entered the hotel. Mr. Priestly was unable to identify which male and female entered the hotel but said he knew that they were registered as staying in Room 315. Mr. Priestly was unable to identify the driver of the vehicle because he never saw the black male and female get out of the vehicle. Approximately five minutes after they entered the hotel, Mr. Priestly observed a North Huntingdon Police cruiser pull[] up behind a dark SUV, Chevrolet Blazer, in the hotel parking lot. Sgt. Arendas testified that once he left the hotel, he parked on the Turnpike access road which overlooks the hotel parking lot, he ran the license plate information and the vehicle came back as stolen from the

_____

[3] Mr. Priestly's testimony differs from that of Sgt. [Gregory] Arendas. Sgt. Arendas testified that Mr. Priestly told him that he had observed the juveniles go to several different vehicles. However, Mr. Priestly testified that he only observed the juveniles go to one vehicle, a dark SUV, approximately two times. Sgt. Arendas' version of the facts is further contradicted by the testimony that he told Mr. Priestly that because he hadn't observed anything illegal and could not provide a vehicle description, there was nothing the police could do. This testimony is further complicated by the fact that Mr. Priestly was also never asked to provide the police with a written statement.

[4] This was one of the two instances Mr. Priestly testified that he observed part of the group go to the vehicle in the hotel parking lot.

city of Jeannette. Sgt. Arendas then went into the hotel and told Mr. Priestly that the Chevrolet Blazer was stolen. Mr. Priestly stated, "They were out there for, like, a minute. And then, not long after that, Sgt. Arendas came in, said, you know we're going to need to get into that, you know—we're going to need to go up there. I got other officer[s] arriving, you know; that vehicle come up stolen." Sgt. Arendas asked which hotel room they were staying in and was provided a room key by Mr. Priestly. Sgt. Arendas called for back-up once he determined the vehicle was stolen. Once the other officers arrived, they covered the stairwells and elevator and went up to the third floor. Sgt. Arendas and Officer [Nicholas] Dreistadt testified that at the time they arrived at the hotel room door, they had no knowledge or indication if anyone was in the room or who specifically was in the room.

Sgt. Arendas testified that once they arrived at Room 315, he knocked on the hotel room door. He heard noise in the room, people talking and then heard someone ask "who is it?" Sgt. Arendas said that it was the police and they were there about the noise. When no one came to the door, Officer [William H.] Sombo knocked harder on the door and when he knocked, the door swung open.[5] Sgt. Arendas testified that when the door swung open he observed a black male standing right in front of the bathroom door and two females in the far corner of the room. Sgt. Arendas stepped inside the hotel room door and asked who was driving the vehicle. The male standing in front of the bathroom door said that he was the driver. Sgt. Arendas ordered the male out of the hotel room and he complied. Once the male exited the hotel room, Officer Dreistadt entered the room to clear the bathroom area for officer safety. Officer Dreistadt located a handgun sitting on the back of the commode that was partially covered by a towel.[6] At that point, Officer Dreistadt continued to check the hotel room while Sgt. Arendas ordered the two females out of the room. Officer Dreistadt testified that after he cleared the bathroom, he followed Sgt.

---

[5] Th[is testimony was confirmed by a video recording that was later viewed by the trial court].

[6] Officer Dreistadt testified that once he located the firearm in the bathroom, he notified the other officers and then unloaded it to make it safe.

Arendas into the hotel room where he was securing the female occupants. [Sgt. Arendas testified that he observed a digital scale with a white powdery residue in the area around the sink.] After the officers entered the room further, they observed a black male standing up in the Jacuzzi tub. The occupants of the room were all handcuffed and the first male and two females were placed in the hallway and the male from the Jacuzzi, later identified as [Appellant], was seated on the bed. . . . Once the occupants of the hotel room were detained, Officer Sombo entered the room and secured it. . . .

.    .    .

Sgt. Arendas testified that he did not obtain [] a search warrant for the hotel room because the[ officers] were effectuating a warrantless arrest for a felony. He also stated that he did not seek a warrant because he did not want to jeopardize officer safety. He further testified that he did not seek to obtain a search warrant because it was 2:30 a.m. and there are no courts open. He stated that night court closes before 10:00 p.m. Officer Dreistadt testified that they did not seek a warrant because it was 2:00 a.m. and they did not have a judge on call or one readily available. Officer Dreistadt further testified that they did not obtain a warrant because they were investigating a felony stolen vehicle. Officer [] Sombo testified that they did not obtain a search warrant because they were dealing with a felony but that a warrant can be obtained at night.

Suppression Court Opinion, 4/23/15, at 1-11 (footnotes in original; record citations omitted).

The Commonwealth charged Appellant with possession of a controlled substance with intent to deliver (35 P.S. § 780-113(a)(30)), possession of a controlled substance (35 P.S. §780-113(a)(16)), receiving stolen property (18 Pa.C.S.A. §3925(a)), possession of drug paraphernalia (35 P.S. §780-113(32)), and, possession of a small amount of marijuana (35 P.S. § 780-113(a)(31)). Thereafter, the Commonwealth filed additional charges against Appellant, including: criminal conspiracy – possession of a

- 5 -

controlled substance with intent to deliver (18 Pa.C.S.A. §903(a)(1) and 35 P.S. §780-113(a)(30)), criminal conspiracy – firearms not to be carried without a license (18 Pa.C.S.A. §903(a)(1) and 18 Pa.C.S.A. §6106), criminal conspiracy – receiving stolen property (18 Pa.C.S.A. §903(a)(1) and 18 Pa.C.S.A. §3925(a)), criminal conspiracy – possession of a controlled substance (18 Pa.C.S.A. §903(a)(1) and 35 P.S. §780-113(a)(16)), and criminal conspiracy – possession of drug paraphernalia (18 Pa.C.S.A. §903(a)(1) and 35 P.S. § 780-113(32)).

On March 4, 2014, Appellant and his co-actor moved to suppress the evidence recovered from the hotel room, as well as a statement given by the juvenile co-actor, under the Fourth and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution. The suppression court convened a suppression hearing on March 10, 2014 and, after reviewing briefs submitted by the parties, denied the suppression motions on March 28, 2014. The court concluded that Appellant lacked a legitimate expectation of privacy in room 315 since he did not rent the room and since he was not Ms. Geisey's guest. This latter determination rested upon the court's finding that none of the witnesses at Appellant's suppression hearing testified that Appellant was Ms. Geisey's guest or that they saw Appellant in her presence. Following argument, the court denied Appellant's motion for reconsideration on June 26, 2014.

Because Appellant resides in Allegheny County, the Court of Common Pleas of Westmoreland County held a finding of fact hearing on May 9, 2014. After the hearing, the court dismissed the receiving stolen property charge and a criminal conspiracy charge lodged against Appellant. The court, however, found that Appellant committed the remaining delinquent acts filed against him.

The case was subsequently transferred to the Court of Common Pleas of Allegheny County for adjudication and disposition. On September 30, 2014, the court in Allegheny County adjudicated Appellant delinquent on the charges and set the matter for disposition. On October 21, 2014, the trial court entered a dispositional order placing Appellant at the Glen Mills School.

Thereafter, on November 20, 2014, Appellant's trial counsel filed a notice of appeal but then moved to withdraw as counsel on December 10, 2014. On January 15, 2015, the trial court in Allegheny County issued an opinion finding that Appellant waived all issues on appeal by failing to file a concise statement pursuant to Pa.R.A.P. 1925(b). On January 30, 2015, this Court remanded the matter and directed the prompt filing of a concise statement. New counsel was appointed on March 5, 2015 and, on March 13, 2015, counsel filed a concise statement. The concise statement challenged the denial of Appellant's motion to suppress. On April 23, 2015, the court in Westmoreland County that heard and disposed of Appellant's motion to suppress issued its opinion.

On appeal, Appellant raises the following questions for our consideration:

I.   Whether the [suppression] court erred in denying the Appellant's [m]otion to [s]uppress based on its conclusion that Appellant lacked a reasonable expectation of privacy in the hotel room illegally searched by police?

II.   Whether the Commonwealth failed to prove the existence of probable cause or exigent circumstances necessary to justify a warrantless search of a property?

Appellant's Brief at 3.

Appellant's claims in this appeal challenge the denial of his motion to suppress. Our well-established standard of review governing such challenges is as follows.

We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citation omitted);

*Commonwealth v. Williams*, 2015 WL 5810631, *5 (Pa. Super. 2015).

In his first claim, Appellant asserts that the suppression court erred in denying his suppression motion on grounds that he lacked a legitimate expectation of privacy in room 315 at the Holiday Inn Express. Here, Appellant contends that he was a visitor of a registered hotel guest (Ms. Geisey) and that, pursuant to hotel policy, he was free to come and go from

room 315 without interference from the hotel staff. Appellant also points out that Ms. Geisey, the individual who originally rented the room, never reported her room key lost or stolen and never reported the presence of an unwelcome person in her hotel room. Appellant reasons that since "Ms. Geisey was unequivocally permitted to allow Appellant on to the premises and to provide him with a key[,]" the absence of testimony identifying him as the individual who requested a room change or the one who extended the reservation does not mean that he was an uninvited visitor or unauthorized guest of Ms. Geisey. Appellant's Brief at 16. In Appellant's view, the fact that hotel staff did not witness him with Ms. Geisey is insufficient to defeat his claim that he was a welcomed guest who enjoyed a legitimate expectation of privacy in room 315. For these reasons, Appellant concludes that the trial court erred in finding that he lacked a cognizable privacy interest in room 315.[7]

> Although Appellant was charged with a possessory offense and
> as such has automatic standing to challenge the suppression of

_____

[7] As noted above, the suppression court cited two reasons for its conclusion that Appellant lacked a legitimate expectation of privacy in room 315. In addition to its determination that Appellant was not Ms. Geisey's guest, the suppression court found that Appellant did not rent the hotel room. At the suppression hearing, hotel personnel testified that it was against hotel policy to rent rooms to minors. Appellant does not contest this policy (or offer any argument or point to any evidence adduced at the suppression hearing) to establish that he originally rented room 223, changed Ms. Geisey's registration to room 315, or extended her stay in room 315. Hence, we shall confine our analysis to Appellant's contention that he possessed a legitimate expectation of privacy in room 315 as Ms. Geisey's guest.

the items seized, it was appropriate for the [suppression] court to first examine the question of Appellant's privacy interest in the place searched. *See Commonwealth v. Peterson*, 636 A.2d 615, 617 (Pa. 1993)[; *see also Commonwealth v. Enimpah*, 106 A.3d 695, 701-702 (Pa. 2014) ("it is worth noting that in analyzing the merits of a suppression motion, the [suppression] court may, indeed, treat the defendant's privacy interest as a "threshold" or "preliminary" matter. That is to say, if the evidence shows there was no privacy interest, the Commonwealth need prove no more; in terms of the court's review, it need go no further if it finds the defendant has not proven a reasonable expectation of privacy.")]. Both Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution have been interpreted as protecting zones where an individual enjoys a reasonable expectation of privacy. *Commonwealth v. Parker*, 619 A.2d 735, 737 (Pa. Super. 1993). While the Pennsylvania Constitution may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal law, an individual's expectation of privacy in the place searched must be established to invoke constitutional protection. *Commonwealth v. Melilli*, 555 A.2d 1254, 1258 (Pa. 1989). "[I]n order for a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence used against him, he must, as a threshold matter, establish that he has a legally cognizable expectation of privacy in the premises which were searched." *Commonwealth v. Strickland*, 707 A.2d 531, 534 (Pa. Super. 1998), *quoting Commonwealth v. Carlton*, 701 A.2d 143, 145-146 (Pa. 1997).

An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa. Super. 2005). In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. *Peterson*, 636 A.2d at 619. "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." *Jones*, 874 A.2d at 118.

*Commonwealth v. Viall*, 890 A.2d 419, 421-422 (Pa. Super. 2005) (parallel citations omitted).

Our inquiry into the propriety of the suppression court's ruling involves a two-tiered analysis. First, we consider whether the record developed at Appellant's suppression hearing supports the suppression court's finding that Appellant was not Ms. Geisey's guest. Next, if we determine that Appellant was a visitor of the registered guest in room 315, we then must examine whether an individual occupying such a status has a legitimate expectation of privacy in the hotel room under the circumstances presented before us. This latter inquiry involves a question of law over which our review is plenary. *Commonwealth v. Duncan*, 817 A.2d 455, 459 (Pa. 2003).

Although the suppression court is correct that none of the hotel staff testified that they saw Appellant in Ms. Geisey's presence or stated on the record that he was her guest, our review of the transcript of testimony reveals compelling evidence that Appellant **was** an invited visitor to room 315. Mr. Priestly, a night auditor at the Holiday Inn Express, testified that on February 10, 2014, Appellant, his co-actor, and an unknown female frequently entered and exited the hotel between 11:00 p.m. and 2:00 a.m., and that they returned each time to room 315, the room registered to Ms.

Geisey.[8]   On direct examination by the Commonwealth, the following

exchange with Mr. Priestly occurred:

> Q:    Now, did you observe anything that caused you concern
>        when you were working there in the early morning hours
>        of February 10?
>
> A:    Um, just a lot of continuous traffic in and out of the hotel,
>        which, you know, at that time of night is a pretty odd
>        thing.
>
> Q:    Okay.   Now, continuous traffic by certain people or
>        different people?
>
> A:    Yes.
>
> Q:    And what people were those?
>
> A:    The two defendants sitting there as well as one that I know
>        of – one female that I don't know the name of.  And from
>        the hours of 11 to 2, they probably went in and out of the
>        hotel about half a dozen times.
>
> Q:    From 11 to 2?
>
> A:    Uh-huh.
>
> Q:    And did you notice what room they went to when they
>        were in the hotel?
>
> A:    Yes.
>
> Q:    What room was it?

_____

[8] Ms. Morris testified that while Ms. Geisey had no registered guests, she brought in two females and two males.  **See** N.T., 3/10/14, at 25.  At no time did Ms. Morris testify that Appellant was one of the males that came in with Ms. Geisey or that Appellant ever possessed a key to room 315.  **Id.** at 29.  Moreover, Ms. Niemiec never identified Appellant as being with Ms. Geisey or having a key to the room.

A:     It was Room 315.

N.T., 3/10/14, at 37-38.

The foregoing testimony demonstrates that Appellant made approximately six visits to room 315 during a three-hour span in the early morning hours of February 10, 2014.  Despite the frequency of these visits and the late hour during which they occurred, there is no evidence in the record that Ms. Geisey, who had the right to admit visitors freely, complained of unwanted or uninvited visitors in room 315.  In view of this evidence, we conclude that, while no witness specifically testified that Appellant was Ms. Geisey's guest or that they saw Appellant in her presence, the record refutes the trial court's finding that Appellant was not an invited visitor to room 315.

Having concluded that Appellant was the visitor of a registered hotel guest, our task now is to determine whether, under the circumstances present in this case, such an individual enjoys a legitimate expectation of privacy in a hotel room.  Pennsylvania law recognizes that, "[a] hotel room can [] be the object of Fourth Amendment protection as much as a home or an office." **Commonwealth v. Dean**, 940 A.2d 514, 519 (Pa. Super. 2008), *quoting* **Hoffa v. United States**, 385 U.S. 293, 301 (1966). Pennsylvania jurisprudence further establishes that a registered hotel guest enjoys a legitimate expectation of privacy during the period of time in which the room rental remains valid. **See Commonwealth v. Brundidge**, 533

A.2d 1115, 1118 (Pa. 1993); *see generally*, *Dean*, *supra*. Appellant's position in this case asks us to extend the recognized privacy interest of a registered hotel guest to the casual visitor of a hotel patron.

We have been unsuccessful in our efforts to locate Pennsylvania precedent that rests on all fours with the facts in the instant case. Nevertheless, this Court has previously recognized that, "a casual visitor who is merely present in another[] person's home does not have a legitimate expectation of privacy to contest an illegal entry by police into that home and in order for such an individual to establish an expectation of privacy that individual must demonstrate a significant and current interest in the searched premises." *Viall*, 890 A.2d at 423, *quoting* **Commonwealth v. Govens**, 632 A.2d 1316, 1319 (Pa. Super. 1993). Like a visitor who lacks a legitimate privacy interest in the entire area of another's home, a casual visitor of a registered hotel guest does not, by his mere presence, have a legitimate expectation of privacy in the areas of the hotel room commonly accessible to all who were present and as to objects that are left in plain view. **See Viall**, 890 A.2d at 423 ("it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants").

In this case, the evidence recovered from room 315 was not concealed and was located in common areas accessible to all who were present. Appellant, his co-actor, and two unidentified females were present in the

room.   Apart from the permitted nature of his presence in room 315, Appellant points to no other factors that establish a legitimate expectation of privacy.   Appellant failed to demonstrate that he had a significant and current interest in Room 315.   ***See Viall, supra.***   Under these circumstances, we conclude that it is unreasonable for Appellant to assert a legitimate expectation of privacy in the common areas of room 315 or in the contraband objects that were open to the view of the many occupants of the same small space.

Here, Appellant presented no evidence at the suppression hearing; thus, we must look to the Commonwealth's evidence to determine whether Appellant had a legitimate expectation of privacy in room 315.  Although the Commonwealth's evidence demonstrated that Appellant may have been a visitor of a registered guest at the Holiday Inn Express, that evidence, apart from Appellant's permitted presence, failed to show a possessory interest or any other factor from which a reasonable and justifiable expectation of privacy could be deduced.  There is no evidence that Appellant had a key to room 315, that he enjoyed the right to admit or exclude individuals from the hotel room, that he paid for Ms. Geisey's rental, that he requested the change in her room reservation, or that he extended her stay at the Holiday Inn Express.  Moreover, standing alone, Appellant's permitted presence is insufficient to establish a legitimate expectation of privacy in places equally accessible to others, ***Viall***, ***supra***, or as to effects that were left in the open

and not maintained as private.  *See Commonwealth v. Sell*, 470 A.2d 457, 486 (Pa. 1983) ("[s]o long as a person seeks to preserve his effects as private, even if they are accessible to others, they are constitutionally protected").[9]

For the foregoing reasons, we conclude that Appellant is not entitled to relief.  Additionally, in light of our determination that Appellant lacked a legitimate expectation of privacy, we need not address his second contention which asserts that the Commonwealth failed to establish probable cause and exigent circumstances to support the officers' warrantless intrusion into room 315.  *Enimpah*, 106 A.3d at 701-702.  Accordingly, we affirm.

Order of disposition affirmed.

_____

[9] This case likely would have a different outcome if certain evidence introduced at Appellant's May 9, 2014 finding of fact hearing had been introduced during the suppression proceedings.  Among other things, it was revealed at the finding of fact hearing that officers recovered a key to room 315 from Appellant's trousers as well as personal identification papers, including his social security card and birth certificate.  N.T., 5/9/14, at 31, 37, 78, and 84.  Such evidence might show a possessory interest or legitimate expectation of privacy akin to that enjoyed by a registered hotel guest.  *See Brundidge*, 533 A.2d at 1118; *see also Commonwealth v. Davis*, 743 A.2d 946, 950 (Pa. Super. 1999) (defendant who was not a named lessee had a legitimate expectation of privacy in premises where he carried a key to the apartment and maintained clothes, identification tag, and prescription medicine within the apartment).  However, in the aftermath of *In re L.J.*, *supra*, we are no longer permitted to consider evidence developed outside of the suppression proceedings unless that evidence was unavailable.  Appellant makes no claim that he was unaware of the items recovered from his trousers or elsewhere from room 315.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/14/2015</u>