J-S62032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JULIAN DAVIS | |
| Appellant | No. 552 WDA 2015 |

Appeal from the Judgment of Sentence March 16, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012198-2014

BEFORE: GANTMAN, P.J., JENKINS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED JANUARY 12, 2016**

Appellant, Julian Davis, appeals from the judgment of sentence entered in the Allegheny County Court of Pleas, following his convictions of firearms not to be carried without a license, persons not to possess firearms, altered, forged, or counterfeit documents and plates, driving while operating privilege is suspended or revoked, and general lighting requirements—no rear light. We affirm.[1]

In its opinion, the trial court fully and correctly sets forth the relevant facts of this case. Therefore, we have no reason to restate them. Procedurally, on October 24, 2014, the Commonwealth charged Appellant

_____

[1] 18 Pa.C.S.A. §§ 6106, 6105(a)(1), 75 Pa.C.S.A. §§ 7122(3), 1543(a), and 4303(b), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

with firearms not to be carried without a license, persons not to possess firearms, altered, forged, or counterfeit documents and plates, driving while operating privilege suspended or revoked, general lighting requirements—no rear light, and conspiracy—firearms not to be carried without a license.[2] Appellant filed an omnibus pre-trial motion on January 26, 2015, in which Appellant sought to suppress the firearm recovered from the vehicle during the traffic stop. On March 16, 2015, the trial court held a hearing on Appellant's suppression motion, after which the court denied the motion. That same day, Appellant proceeded to a bench trial; the court found Appellant guilty on all counts. Appellant waived the pre-sentence investigation ("PSI") report, and the court sentenced Appellant to an aggregate term of three (3) to six (6) years' imprisonment. Appellant filed a timely notice of appeal on April 2, 2015. On April 8, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and Appellant timely complied on May 7, 2015.[3]

Appellant raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED BY RULING THAT [APPELLANT] DID NOT HAVE STANDING TO CHALLENGE THE SEARCH OF HIS AUTOMOBILE WHERE HE WAS CHARGED WITH A POSSESSORY OFFENSE, WAS

---

[2] The Commonwealth withdrew the conspiracy charge against Appellant on November 6, 2014.

[3] The court's order on April 8, 2015, gave Appellant thirty days to file his Rule 1925(b) concise statement.

OPERATING THE VEHICLE, AND PROVIDED A SALES AGREEMENT TO POLICE UPON REQUEST?

WHETHER THE TRIAL COURT ERRED WHEN IT DENIED [APPELLANT'S] SUPPRESSION MOTION WHERE HE WAS RESTRAINED AND UNABLE TO ACCESS THE PASSENGER COMPARTMENT OF THE VEHICLE AND THE PRIMARY PURPOSES OF THE OFFICERS' SEARCH OF HIS VEHICLE WAS INVESTIGATORY IN NATURE?

(Appellant's Brief at 4).

Our standard of review of a denial of a motion to suppress evidence is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appeal court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) (internal citation omitted).

"The Fourth Amendment of the United States Constitution and Article I, Section [8] of the Pennsylvania Constitution guarantee individuals freedom

from unreasonable searches and seizures." ***Commonwealth v. El***, 933 A.2d 657, 660 (Pa.Super. 2007). "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Bostick***, 958 A.2d 543, 550-51 (Pa.Super. 2008), *appeal denied*, 604 Pa. 702, 987 A.2d 158 (2009). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa.Super. 2011). Importantly,

> The traditional formulation for standing requires a defendant to demonstrate one of the following personal interests: (1) his presence on the premise at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.

***Bostick, supra*** at 551 (internal citation omitted). "[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search." ***Maldonado, supra*** at 910.

To prevail on a suppression motion, however, the defendant must show as a preliminary matter that he had a privacy interest in the area

searched. *Id.* at 910-11. In the context of the search of an automobile, where the defendant produces no evidence that he owns the vehicle, has permission from the owner to use the vehicle, or any other connection to the vehicle, the defendant fails to establish a reasonable expectation of privacy in the vehicle searched. *Commonwealth v. Millner*, 585 Pa. 237, 888 A.2d 680 (2005). When a defendant fails to establish a reasonable expectation of privacy in the area searched, "there [is] no need for the Commonwealth to establish the lawfulness of the police entry into the [area] and the seizure of the [item in question]…." *Id.* at 258, 888 A.2d 692. The court need not address a defendant's claim that the police engaged in unlawful conduct, if the evidence establishes the defendant has no privacy interest. *Commonwealth v. Enimpah*, ___ Pa. ___, 106 A.3d 695, 702 (2014). *See also Commonwealth v. Peterson*, 535 Pa. 492, 636 A.2d 615 (1993) (holding when defendant lacks reasonable expectation of privacy in area searched, he has no right to challenge search, and court need not address defendant's claim that police conduct was unlawful).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph K. Williams, III, we conclude Appellant's first issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed June 1, 2015, at 3) (finding: Appellant failed to make necessary showing that he had reasonable

expectation of privacy in vehicle searched; vehicle was not registered in Appellant's name, and Appellant presented no evidence at suppression hearing that he owned vehicle; Appellant failed to introduced into evidence at suppression hearing sales agreement Appellant allegedly gave to police officers when vehicle was stopped; even though there was mention of sales agreement at suppression hearing, court was unable to know what information that document provided because sales agreement was not introduced; further, Appellant presented no evidence at suppression hearing that Appellant had permission from owner to use vehicle; Appellant failed to establish he had reasonable expectation of privacy in vehicle because Appellant did not show any personal connection to vehicle; thus, Appellant cannot challenge manner in which firearm was recovered from vehicle). The record supports the court's sound reasoning. *See Millner, supra*.

Additionally, the sales agreement Appellant allegedly gave to the police at the time of the traffic stop is not contained in the certified record. Further, Appellant made no attempt at the suppression hearing to explain the content of the sales agreement. Because Appellant had no reasonable expectation of privacy in the vehicle, we need not address Appellant's second issue, in which he complains the police engaged in unlawful conduct when they searched the vehicle. *See Enimpah, supra*; *Peterson, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/12/2016</u>

# THE COURT OF COMMON PLEAS
## OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA,

CRIMINAL DIVISION

vs.

CC# 2014-12198

552 WDA 2015

JULIAN A. DAVIS

## OPINION

This appeal is all about the suppression ruling this Court made.

On March 16, 2015, the parties appeared for trial. Before that event took place, a suppression hearing was held. The focus was a .38 caliber, nine millimeter firearm, with 7 bullets in the magazine, found inside a zippered owner's manual which was found in the storage compartment on the driver's door. The government presented the testimony of two, Monroeville police officers and admitted two exhibits – the gun and a driving record. The defense rested without presenting any evidence. The parties then argued. The government's view was the recovery of the gun was constitutionally permissible on any one of three theories: sufficient reasonable suspicion to justify a search for officer safety; a proper inventory search was conducted, or inevitable discovery. Suppression Hearing Transcript ("SHT"), pg. 35 (March 16, 2015).[1] This Court found in favor of the government and rested its

---

[1] The transcript was docketed on April 8, 2015 and has a tracking number of T15-0661.

1

decision on the inventory search. "[W]hen a car is in the middle of a roadway and there is no one to drive it. I believe this opens the car as well as who may have an interest in the car to a higher degree of intrusion, and I believe that's what happened in this case." SHT, at 37.

The facts of this matter are not complicated. On August 23, 2014, a Monroeville officer sees a Ford Focus driving on Mosside Boulevard with its rear, center brake light not illuminating entirely. It appeared as if one of the bulbs inside the brake light was burned out. A check of the license plate revealed that license plate did not belong to that vehicle. SHT, 5. A traffic stop took place.[2] This particular police car had two officers inside. Each approached the stopped Ford Focus on opposite sides. Officer Brad Martin, Jr. approached the driver, eventually identified as Julian Davis. Officer James MacDonald took a position on the passenger side. Officer Martin noticed Mr. Davis' hands were shaking or trembling. He was breathing heavy with his "chest rising and falling rapidly". SHT, 22. Mr. Davis produced his driver's license, insurance card and a sales agreement. SHT, 23. Officer Martin returned to his police car and was meet there by Officer MacDonald who had retrieved similar identifying information from the passenger. A computer check showed the passenger had an outstanding warrant and Mr. Davis' license was suspended. SHT, 23; Exhibit 2; SHT, 24. A re-approach resulted in the passenger being removed, handcuffed and escorted to the back seat of the police car. SHT, 10.

Mr. Davis was then asked to get out of the car. He complied. He walked to the rear of his vehicle and was patted down. No weapons were found. SHT, 25. Davis was pacing back and forth and his head was pivoting left and right. He created the impression that he was looking for an escape route. SHT, 10. He was then handcuffed and told to sit on the curb.

Neither occupant of the Ford Focus could drive the vehicle away. Davis' license was suspended and the unamend passenger had an outstanding warrant. The car came to a stop right in the lane of travel

---

[2] Mr. Davis wisely did not contest the sufficiency of cause to conduct the traffic stop.

on Mosside Boulevard.[3] The officers could not just leave the vehicle there. It needed to be towed. A tow policy exists for Monroeville. SHT, 11.[4] A prelude to a tow is an inventory search. Officer MacDonald conducted that search. He began near the driver's door area as that was the area that a black binder/owner's manual was removed from the glove compartment and handed to Mr. Davis by the passenger. SHT, 12. He saw the item. He picked it up. It was heavier than his life experience taught him. SHT, 12. He unzipped it. Inside was a gun. SHT, 12.

For as well prepared as defense counsel was for the merits of the case, he overlooked one important aspect – expectation of privacy. Pennsylvania law grants automatic standing to one charged with a possessory offense but that only gets you a seat at the suppression table. Your ability to stand at that table and complain that you don't like your seat is entirely dependent upon the accused showing an expectation of privacy in the item seized or the place searched. On this record, Davis has failed to make this necessary showing. The vehicle was not registered to Mr. Davis. SHT, 23. Nor was there evidence presented that Davis owned the vehicle. There was some evidence presented about a sales agreement. But, that document was not part of the government's case nor was it part of Davis' evidentiary presentation. Who knows what information it may have provided? It may have helped Davis, but, perhaps, not. Equally absent was any evidence that Davis had permission from the owner to use the vehicle. Bottom line, Davis did nothing to show his connection to this vehicle. *See*, Commonwealth v. Burton, 973 A.2d 428 (Pa. Super. 2009). As such, he has not shown an expectation of privacy and cannot complain about the manner in which the firearm was recovered from a car he was driving.

---

[3] Mosside Boulevard is probably Monroeville's second busiest road after State Route 22. The Court is well aware of those two avenues having resided in the Eastern suburbs of Allegheny County for many years.

[4] "[W]hen there is no licensed driver able to operate the vehicle from the scene that we notify [the towing company] who take custody of the vehicle and remove it because of the obstruction it causes on the highway." SHT, 11.

3

Assuming for the moment, that Mr. Davis can scale "Mount Expectation of Privacy", the inventory search was proper.

The United States Supreme Court has determined that one exception to the warrant requirement is for inventory searches of lawfully seized automobiles.[5] Colorado v. Bertine, 479 U.S. 367, 371, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); Illinois v. Lafayette, 462 U.S. 640, 643, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983)("[T]he inventory search constitutes a well-defined exception to the warrant requirement."); South Dakota v. Opperman, 428 U.S. 364, 372, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) ("[I]nventories pursuant to standard police procedures are reasonable."). Inventory procedures serve three "strong governmental interests": "[1] to protect an owner's property while it is in the custody of the police, [2] to insure against claims of lost, stolen, or vandalized property, and [3] to guard the police from danger." *Bertine,* 479 U.S. at 372. Lawful inventory searches must be "conducted according to standardized criteria" or established routine, consistent with the purpose of a non-investigative search. Id. at 374 n.6. This requirement "tend[s] to ensure that the intrusion w[ill] be limited in scope to the extent necessary to carry out the caretaking function." Opperman, 428 U.S. at 375. The criteria or routine must limit an officer's discretion in two ways: first, as to whether to search the vehicle, and second, as to the scope of an inventory search. Salmon, 944 F.2d at 1120-21 (citing *Florida v. Wells,* 495 U.S. 1, 4-5, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990); Bertine, 479 U.S. at 374 & n.6, 375-76). These limitations ensure that officers performing these caretaking functions are "'not [ ] allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of a crime.'" Id. at 1120 (quoting *Wells,* 495 U.S. at 4 (quotation marks omitted)); see also *Wells,* 495 U.S. at 4 ("[A]n inventory search must not

---

[5] Mr. Davis raised a claim under the federal and state constitution. *Omnibus Pretrial Motion,* paragraph 7 (Jan. 26, 2015). The law regarding the inventory exception to the warrant requirement in Pennsylvania comes from Commonwealth v. Scott, 365 A.2d 140 (Pa. 1976),which was decided 3 months after South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Scott relied heavily upon Opperman and, decisions through the years, have relied heavily upon both decisions. See, Commonwealth v. Nace, 571 A.2d 1389 (Pa. 1990), *cert. denied,* 498 U.S. 966, 111 S.Ct. 426, 112 L.Ed.2d 411 (1990); Commonwealth v. Begley, 780 A.2d 605 (Pa. 2001). The analysis of the inventory exception is the same regardless of which constitution applies.

4

be a ruse for a general rummaging in order to discover incriminating evidence.").[6]

While no documentary evidence about the inventory policy was introduced at the suppression hearing this is not fatal to the government's position. In <u>United States v. Mundy</u>, 621 F.3d 283 (3d Cir. 2010), *cert denied,* 2011 U.S. Lexis 1291 (U.S. Feb. 22, 2011), the Court discussed alternative ways to show compliance.

> "The existence of . . . a valid [standardized inventory search] procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices." *United States v. Thompson,* 29 F.3d 62,65 (2d Cir. 1994)(citations omitted); *see also United States v. Como,* 53 F.3d 87,92 (5th Cir. 1995)(upholding inventory search in the absence of a written policy, explaining that "testimony regarding reliance on standardized procedures is sufficient").

<u>Id</u>., at 290, f.n.5. The officer's demeanor and the overall content of their testimony on this topic was credible. The Court accepts this evidence about the existence of the inventory policy and that they acted in accord with that policy when the decision was made to tow the vehicle.

The Clerk of Courts shall forward the certified record to the Superior Court of Pennsylvania in due course.

BY THE COURT:

Joseph K. Williams, III, J.
Joseph K. Williams, III

---

[6] This two paragraph overview is taken from <u>United States v. Mundy</u>, 621 F.3d 283,287-88 (3d Cir. 2010), *cert denied,* 2011 U.S. Lexis 1291 (U.S. Feb. 22, 2011).

5